UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RHONDA EASTER, | § | No. 5:16−CV−222−DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PROFESSIONAL PERFORMANCE | § | |
| DEVELOPMENT GROUP, INC., and | § | |
| ANA MARIA LECEA, PRESIDENT, | § | |
| | § | |
| Defendants. | § | |

<u>ORDER GRANTING MOTION TO COMPEL</u>

Before the Court is a Motion to Compel Arbitration filed by

Defendants Professional Performance Development Group, Inc. ("PPDG") and

Ana Maria Lecea, in her official capacity as President of PPDG ("Lecea)

(collectively, "Defendants").  (Dkt. # 6.)  Pursuant to Local Rule CV-7(h), the

Court finds this matter suitable for disposition without a hearing.  After careful

consideration of the memoranda filed in support of and in opposition to the motion,

as well as the arguments presented at the hearing, the Court, for the reasons that

follow, **GRANTS** the Motion to Compel Arbitration (Dkt. # 6).

1

BACKGROUND

On November 1, 2010, PPDG hired Plaintiff as a Human Resource Specialist.  ("Compl.," Dkt. # ¶ 6.)  Plaintiff's work scheduled included normal work week hours and a requirement that she be "on call" over the weekend.  (Id.)  Plaintiff's job responsibilities included constructing work schedules for 172 medical personnel and all related tasks necessary to achieve that goal.  (Id. ¶ 7.)

At the start of Plaintiff's employment with PPDG, the parties entered into an Employee Grievance Resolution Process Agreement (the "Agreement").  ("Agreement," Dkt. # 6, Ex. 1.)  This stand-alone agreement was signed by Plaintiff and PPDG's President, Defendant Ana Marie Lecea.  (Id.)  The Agreement begins by expressly stating that Plaintiff "hereby agree[s] that in the event a disagreement arises between myself and [PPDG] arising out of, or in any fashion relating to my employment with [PPDG], that disagreement shall be resolved in the manner set forth below."  (Id.)  The "manner set forth below" binds Plaintiff to exhaust "all informal, internal mechanisms for resolution of grievances."  (Id. § 1.)  Once informal mechanisms are exhausted, Section 2 of the Agreement, titled "Procedure for Requesting Arbitration," states that Plaintiff "agree[s] that in the event that I wish to demand arbitration of a dispute with PPDG, I shall make a demand in writing within 90 days of the later of" the incident or the exhaustion of informal remedies.  (Id. § 2.)  PPDG agrees that, "upon receipt

2

of this demand, a joint request for arbitration will be prepared, and submitted to the

American Arbitration Association ('AAA') or similar third party organization of

arbitrators."  (Id.)

        The Agreement is applicable to:

> all actions, in contract or in tort, at law or in equity arising from, or
> relating to my employment by [PPDG], including but not limited to:
> wrongful termination, breach of express or implied contract,
> promissory estoppel, quantum meruit, unjust enrichment, tortious
> interference with prospective or existing contractual relations,
> intentional or negligent infliction of emotional distress, damages to
> person or property arising from the negligence or purposeful actions
> of [PPDG] or its employees, defamation and invasion of privacy.

(Id. § 9.)  Further, once arbitration is selected, the parties agreed that "the arbitrator

shall have the power to grant all relief, including equitable relief, which would be

available were the dispute resolved in a court of law.  (Agreement § 7.)  Further,

"[t]he arbitrator's decision shall be binding, and subject to judicial review only

upon a showing of bias, abuse of discretion, gross error of fact, palpable illegality,

or if the arbitrator's award contravenes the authority granted to the arbitrator by

this agreement." (Id.)

        During the course of Plaintiff's employment, her daughter

experienced kidney failure resulting in the need for dialysis every week on

Monday, Wednesday, and Friday.  (Compl. ¶ 9.)  As a result of her work schedule

and her daughter's health, Plaintiff contends that she experienced declining health

of her own including a sleep disorder.  (Id. ¶ 12.)  Due to these issues, Plaintiff

began to miss work starting in the fall of 2014, and asked to have her schedule altered so that she could take care of herself and her daughter.  For example, Plaintiff did not work from January 26 through February 13, 2015, because her daughter received a kidney transplant.  Plaintiff alleges that during her absence PPDG re-assigned her to assist the Human Resources Administrator.  (Id. ¶ 23.) Plaintiff returned to work on February 17, 2016, and alleges she received a written counseling letter for the first time during the course of her employment.  (Id. ¶ 24.) Plaintiff worked on February 18−19, 2015, but missed the following week of work to take care of her daughter.  (Id. ¶ 25.)  On February 25, 2015, PPDG mailed Plaintiff a letter terminating her employment.  (Id. ¶ 26; "Ans.," Dkt. # 4 ¶ 26.)

On March 1, 2016, Plaintiff filed a Complaint against Defendants alleging three separate causes of actions: (1) violation of the Americans with Disabilities Act ("ADA") for failing to provide her a reasonable accommodation; (2) violation of the FMLA; and (3) violation of the Fair Labor Standards Act ("FLSA") for not paying her overtime compensation for hours worked in excess of forty hours per week.  (Compl. ¶¶ 29−44.)  Plaintiff also seeks affirmative injunctive relief with an order restoring her to full employment with Defendant and that the Court retain jurisdiction to ensure compliance.  (Id. ¶ 45−48.)  Finally, Plaintiff seeks inter alia, special, compensatory, and punitive damages.  (Id. ¶ 28.)

4

LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).

The Fifth Circuit employs a two-step analysis to determine whether a court may compel a party to arbitrate. Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008) (citations omitted). First, a court must ask if the parties agreed to arbitrate the dispute. Webb v. Instacorp., Inc., 89 F.3d 252, 258 (5th Cir. 1996). This determination requires consideration of whether a valid agreement to arbitrate exists among the parties and whether the dispute is within the scope of the arbitration agreement. Id. In making this determination, courts should generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. Id. Once a court determines that the parties agreed to arbitrate, the court must assess whether any legal restraints external to the agreement foreclose

arbitration of the dispute.  OPE Int'l L.P. v. Chet Morrison Contractors, Inc., 258

F.3d 443, 445–46 (5th Cir. 2001).

DISCUSSION

I.      Whether Parties Agreed to Arbitrate

        A. Whether a Valid Contract Exists

        Plaintiff argues that a valid arbitration agreement does not exist

because the contract lacks mutuality of obligation.  (Dkt. # 12 at 1.)

        The enforceability of an arbitration agreement in Texas is a question

of law.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003).

"Mutual agreement to arbitrate claims provides sufficient consideration to support

an arbitration agreement."  In re 24R, Inc., 324 S.W.3d 564, 566 (Tex. 2010).  "In

the context of stand-alone arbitration agreements, binding promises are required on

both sides as they are the only consideration rendered to create a contract."  Id. at

566−67 (quoting J.M Davidson, 128 S.W.3d at 228).  "A promise is illusory if it

does not bind the promisor, such as when the promisor retains the option to

discontinue performance."  Id. at 567 (quoting Mann Frankfort Stein & Lipp

Advisors, Inc. v. Fielding, 289 S.W.3d 844, 849 (Tex. 2009)). "An arbitration

clause is not illusory unless one party can avoid its promise to arbitrate by

amending the provision or terminating it altogether."  Id. at 567 (quoting In re

Odyssey Healthcare, Inc., 310 S.W.3d 419, 422 (Tex. 2010)).

Plaintiff argues that the Agreement lacks mutuality of obligation because Plaintiff agrees to arbitrate her claims arising out of disputes against PPDG, while PPDG makes no such similar promise for its disputes against Plaintiff.  (Dkt. # 12 at 1−2.)  The Court disagrees.  "It is quite elementary that the promise of one party is valid consideration for the promise of the other party."  Song v. 4170 & 4231 & 4271 Altoona Drive Holdings Ltd. P'Ship, 616 F. App'x 645, 648 (quoting Tex. Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 285 (Tex. 1923)).  However, the promises need not be identical.  14 Tex. Jur. 3d Contracts § 155 (2016); see also Sparks v. Stone St. Capital, Inc., No. 3-02-CV-724-R, 2002 WL 1575404, at *5 (N.D. Tex. July 15, 2002) (noting that under Texas and federal law "mutuality of obligation" does not mean "equivalency of obligation").  In this case, Plaintiff promised to demand arbitration, if she wished to pursue her grievance, according to explicit procedures to resolve any grievance arising out her employment with PPDG.  (See Agreement.)  In exchange for that promise, PPDG promised to commit itself to that demand and to bind itself to any decision by an arbitrator.  (Id.)  While such promises are not identical, the Agreement does not provide PPDG any power to avoid its promise to arbitrate or to discontinue its commitment to arbitration once Plaintiff filed a demand.  Accordingly, PPDG's promise is not illusory because PPDG cannot avoid its

7

promise to arbitrate Plaintiff's claims, and the Court finds that the Agreement is valid.

      B.  <u>Whether the Dispute is Within the Scope of the Agreement</u>

Plaintiff argues in the alternative, that even if the agreement is valid, the dispute does not fall within the scope of the Agreement because the express terms of the Agreement do not actually require her to arbitrate her claims. Instead, Plaintiff argues that the express terms give her the option to arbitrate instead of requiring her to arbitrate.

In Texas, the primary concern in contract interpretation is to "ascertain the true intentions of the parties as expressed in the instrument." <u>FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.</u>, 426 S.W. 3d 59, 63 (Tex. 2014). The Texas Supreme Court requires lower courts to "consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless." <u>Id.</u> "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." <u>Coker v. Coker</u>, 650 S.W.2d 391, 393 (Tex. 1983).

The Agreement's opening paragraph states in full,

> I, the undersigned employee of [PPDG] hereby agree that in the event that a disagreement arises between myself and [PPDG] arising out of, or in any fashion relating to my employment with [PPDG], that disagreement shall be resolved <u>in the manner set forth below</u>.

(Agreement.) (emphasis added).  Such "manner set forth below" includes the

following,

Section 2 – Procedure for Requesting Arbitration

> I agree that in the event that I wish to demand arbitration of a dispute
> with [PPDG], I shall make such demand in writing within 90 days of
> the later of 1) the date of the incident which gives rise to the dispute,
> 2) the exhaustion of the informal internal dispute resolution
> mechanisms. . .

(Id. § 2.)  The final page of the Agreement sets forth a summary of the schedule of

events covered by the instrument.  (Id. at 5.)  The first event states,

> 1.  Within 90 days from the date of the event – Employee must
>     make demand for arbitration (Section 2).

(Id.)   Plaintiff argues that the term "in the event that I wish to demand

arbitration," located in Section 2 does not impose a contractual obligation to

arbitrate.

The Court begins in recognizing the apparent textual conflict.  Read in

isolation, Section 2 contains language supportive of Plaintiff's position that she

only agreed to arbitration "in the event that I wish to demand arbitration."

(Agreement § 2.)  However, under Texas law no single provision is independently

given controlling effect.

Plaintiff agrees in the opening paragraph that all disagreements she

has relating to employment "shall" be resolved in the manner set forth in the

Agreement.  (Agreement at 1.)  The entire Agreement sets forth the process for

9

demanding and conducting arbitration.  According to the Agreement, Plaintiff must first exhaust all informal and internal mechanisms to resolve a grievance. (Agreement § 1.)  If such informal mechanisms fail, Section 2 requires Plaintiff to file an arbitration demand in writing within 90 days from the date of the event, if she wishes to do so.  (Id. § 2.)  Finally, the last page of the contract summarizes all of the key deadlines set forth in the Agreement.  (Agreement at 5.)  The first term states that "[w]ithin 90 days from the date of the event – [e]mployee must make demand for arbitration (Section 2)."  (Id.) (emphasis added).  In considering that the entire Agreement must harmonize and give effect to all provisions, the Court finds that it is unambiguous that the parties intended for the contract to compel Plaintiff to arbitrate her claims arising out of her employment.  While Section 2 states Plaintiff agrees "that in the event that I wish to demand arbitration of a dispute with [PPDG], I shall make such demand in writing within 90 days [of the event or exhaustion of the informal mechanisms]," the most reasonable interpretation of this phrase, when considering the entirety of the Agreement, is "in the event that I wish to pursue my grievance with PPDG, I shall make such demand in writing within 90 days."  To interpret the Agreement otherwise, would render meaningless other parts of the Agreement to include its last page where it makes clear that Section 2 imposes a requirement on Plaintiff to demand

10

arbitration if she is unsatisfied with the outcome of the informal process.
(Agreement at 5.)

Further, the FAA reflects a "liberal federal policy favoring arbitration." Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 205 (5th Cir. 2012). "[A]ny ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." Webb v. Investacorp, Inc. 89 F.3d 252, 258 (5th Cir. 1996). This policy in favor of arbitration also weighs in favor of the Court's determination that Section 2 requires Plaintiff to make an arbitration demand if she wishes to pursue her grievance after exhaustion of any informal resolution mechanisms.

II.     Whether a Non-Signatory May Compel Arbitration

Lastly, Plaintiff contends that Defendant Lecea cannot compel arbitration because she is a nonsignatory to the Agreement. (Dkt. # 12 at 2−3.)

"Under the FAA, traditional principles of state law may allow an arbitration contract to be enforced by or against nonparties to the contract through a number of state-contract-law theories." Al Rushaid v. Nat'l Oilwell Varco, Inc., 814 F.3d 300, 305 (5th Cir. 2014) (quoting Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 255 (5th Cir. 2014)). Texas law governs this particular issue. (Agreement § 11.) Under Texas law, an intended third-party beneficiary to an arbitration agreement, although not a signatory, may compel

arbitration.  In re NEXT Financial Grp., Inc., 271 S.W.3d 263, 267 (Tex. 2008).

"In determining whether a third-party beneficiary may enforce a contract, the

intention of the contracting parties is controlling."  Basic Capital Mgmt., Inc. v.

Dynex Commercial, Inc., 348 S.W.3d 894, 900 (Tex. 2011).  "The intention to

contract or confer a direct benefit to a third party must be clearly and fully spelled

out or enforcement by the third party must be denied."  Id.

The Agreement indicates a clear intent that the signatories—Plaintiff and

PPDG—meant to make Defendant Lecea a third-party beneficiary.  Section 9 of

the Agreement states in relevant part, "this agreement applies to all actions, in

contract or in tort, at law or in equity arising from, or relating to my employment

by [PPDG], including but not limited to . . . acts of [PPDG] or its employees."

(Agreement § 9) (emphasis added).  The Agreement clearly expresses that the

signatories agreed to submit claims to arbitration that arose out of acts involving

PPDG's employees.  By doing so, the Agreement extended a clear benefit to PPDG

employees that they would not be subject to litigation in courts of general

jurisdiction.  Here, Lecea is an employee because she is the President of PPDG.

Accordingly, she is a third-party beneficiary of the Agreement and may compel

arbitration.

III.     Rules Governing Arbitration

Plaintiff requests that the Court order the parties to conduct arbitration through the AAA under the Employment Arbitration Rules, if the Court compels arbitration.  (Dkt. # 12 at 3.)  Defendants do not oppose this request, and for good reason—the Agreement requires arbitration by the AAA.  (Agreement § 2.)

CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendants' Motion to Compel Arbitration.  (Dkt. # 6.)  The Court **ORDERS** this case **STAYED** and directs the Clerk to **ADMINSTRATIVELY CLOSE** the case, subject to reopening upon motion by either party.  The hearing scheduled for August 11, 2016, is **CANCELED.**

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, July 27, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE